**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Antoinet M. Carovac, | ) | CASE NO. 1:19 CV 2344 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Lake County Board of Developmental | ) | **Memorandum of Opinion and Order** |
| Disabilities/Deepwood, et al., | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon Defendants Lake County Board of Developmental Disabilities and Catherine Dye's Motion for Summary Judgment (Doc. 62). This is an employment discrimination case. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Antoinet M. Carovac filed her Fourth Amended Complaint against defendants Lake County Board of Developmental Disabilities/Deepwood ("Lake County BDD"), Brittany Residential, Inc., Ms. Catherine Dye, Mr. Jayson Fabian, and Ms. Paige Powers setting forth 16 claims. This Court has issued two Memoranda and Opinions disposing of various claims. (Docs. 51 and 61). Only moving defendants Lake County BDD and Dye remain. Defendants move for

1

summary judgment on all remaining counts asserted against them. Plaintiff's opposition brief concedes to dismissal of all claims except for two: Count Six which alleges defamation against defendant Dye and Count Eleven which alleges spoliation of evidence against both defendants. As to the latter, however, this Court has previously dismissed the spoliation claim against defendant Lake County BDD. (Doc. 51 at 9). Therefore, Counts Six and Eleven remain against defendant Dye, and these claims are the subject of the motion pending before this Court.

In sum, the Fourth Amended Complaint alleges that plaintiff is a 54 year-old female who was hired in June 2016 by Brittany Residential as a direct support professional. Brittany Residential operates a number of facilities to assist adults with developmental disabilities. One such facility is the Sherwood House. Plaintiff worked at the Sherwood House and her job duties included providing basic personal care and hygiene services to persons receiving services at the facility. Defendant Powers worked with plaintiff, as did non-defendant Gloria Reith. An audio/video recording was surreptitiously made by Powers on her smart phone, with Reith present, in the bathroom at Sherwood House. The recording, which is time-stamped December 13, 2018, depicts an individual verbally abusing a resident. Although plaintiff states that she was not working on December 13, she was terminated on December 17, 2018, as a result of the recording. Brittany Residential informed Lake County BDD of the bathroom incident, which triggered an investigation to which Dye was assigned. In March 2019, Dye contacted plaintiff and informed her that the audio/video recording was "conclusive" evidence that plaintiff committed the acts of verbal abuse it portrayed and that plaintiff was terminated.

The depositions of plaintiff and Paige Powers establish the following facts.[1] (Docs. 57,

---

[1] Defendants present a statement of facts, but plaintiff does not.

2

58). Plaintiff testified that she worked on Saturday, December 15, 2018, beginning her shift at 3:00 p.m. at Sherwood House. Also working were Powers and Reith. They were caring for four developmentally disabled men- Joey, Dan, Charlie, and Bill. The three employees decided to take the men to see Christmas lights after eating pizza for dinner. Plaintiff went to Bill's bedroom to get him dressed. He slid down and fell to the ground as she attempted to get his clothes on. She called to the other employees for help, and they came to the bedroom to assist. Powers testified that as she was walking down the hallway to assist the other men, she heard plaintiff screaming at the client in the bathroom. She "grabbed [her] phone" and recorded the incident from the hallway. She then emailed the video to her supervisor. Plaintiff testified that shortly thereafter, her supervisor arrived at the house and told her to leave due to the verbal abuse of a client. On Monday, December 17, Jayson Fabian called plaintiff and told her she was terminated for the verbal abuse of Bill.

Defendant Catherine Dye submits her declaration which states the following. She has been an Investigative Agent for Lake County BDD since 2002, investigating about 1000 Major Unusual Incidents (MUI) since then. Lake County BDD has a contact line where potential MUIs can be reported. On December 15, 2018, Brittany Residential called in a potential MUI involving the alleged verbal abuse of a resident named Bill by plaintiff. Dye attaches the complete copy of the MUI Investigation file regarding the plaintiff. The investigation was originally assigned to Dye's direct supervisor. However, due to a conflict with another investigation, he forwarded the assignment to Dye on December 17, 2018, at 10:44 a.m., to conduct the investigation. At 11:55 a.m. that day, Brittany Residential Program Coordinator Holly Howle forwarded Incident Reports prepared by Brittany employees Paige Powers and

3

Gloria Reith to Dye's attention, as well as to Dye's supervisor and some others on the board. At 11:57 a.m., Howle forwarded an audio/video recording to Dye. After reviewing the two Incident Reports, Dye noticed that they were nearly identical but did not indicate exactly what was said to Bill. Dye attempted to open the audio-video but was unable to do so. At 12:06 p.m., Dye wrote to Howle and asked what was specifically said to Bill. She also advised that she could not open the audio/video. On December 18, 2018, at 8:29 a.m., Dye received a brief summary from Brittany Residential supervisor Troy Johnson of what was allegedly said to Bill by plaintiff, and Dye advised Johnson and Brittany COO Jayson Fabian that she needed a playable copy of the audio/video taken by Powers.

Dye further states that on December 19, 2018, Dye met with Powers who showed Dye the original smart phone audio/video. Powers confirmed that it was plaintiff on the audio/video making the verbally abusive statements to Bill. Powers also forwarded a playable copy of the recording in three parts which Dye asked the Lake County BDD IT department to consolidate into one. Some of the statements made on the recording included:

> I swear to God! Why are you acting like you can't dress yourself, you know how! Mary told me you dress yourself every morning.
>
> NO SHIT! What did she just tell you?! She just told you what we're doin!
>
> Dam [sic] it Bill I am really getting fed up with this! You are going to stay home if you keep this shit up! I mean it! Oh for God's sake! I am sick of these dam [sic] suspenders! I can't ... get this. Dam [sic] it put them on. You're more trouble than you're worth.

In Dye's view, this clearly evidenced verbal abuse. Dye heard someone on the recording say, "Stop it," and Powers told Dye that the person was Dan- a fellow resident and one of Bill's roommates. This was an independent indication to Dye of the distressing nature of the comments.

4

Dye states that on December 20, 2018, she inquired of Fabian whether plaintiff had heard the audio/video and her reaction to it. Fabian responded that plaintiff had been terminated on December 17. On December 20, Dye followed up with Fabian, requesting more detail. Fabian advised that plaintiff did not deny the incident. Dye also learned that plaintiff was not told about the existence of the audio/video. On January 22, 2019, Dye spoke to plaintiff and requested an interview. Although plaintiff agreed to meet, she then decided not to. On January 25, 2019, Dye obtained written statements from Fabian and Johnson. Fabian wrote, "There is no doubt that is Antoinet Carovac's voice on the recording." Johnson wrote, "There is no doubt that the voice I hear is Antoinette (Toni) Carovac."

Dye states that on January 30, 2019, she received information and documentation from Brittany demonstrating that plaintiff's claim that she was not in the bathroom with Bill on December 15 was false because plaintiff signed that she toileted and dressed him on that date. On January 31, Dye notified the Ohio Department of Developmental Disabilities (ODDD) through its ITS web-portal that the finding of verbal abuse by plaintiff was substantiated. On February 5, ODDD advised Dye that the MUI investigation was closed. On Febryary 11, Dye notified plaintiff in writing that the investigation had been concluded and a substantiation of verbal abuse was found. On February 12, Dye wrote a letter to Bill with her findings of the MUI which concluded that the verbal abuse occurred. She sent a courtesy copy of the letter to Jayson Fabian (Brittany Residential Administrator), Elfie Roman (LCBDD/Deepwood Superintendent), Michael Null (SSA Director), and Craig Snook (SSA). Dye never had any communication with CareWorks. (Dye decl.; Ex. A). The entire MUI Investigation file regarding plaintiff is attached to Dye's declaration. (*Id.* Ex. A).

5

This matter is now before the Court upon Defendants Lake County Board of Developmental Disabilities and Catherine Dye's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Defamation**

Plaintiff argues that her defamation claim against Dye survives summary judgment. Count Six alleges that defendants made false statements about plaintiff, including "false accusations of alleged verbal abuse and false conclusions and spurious investigation(s) of alleged verbal abuse." The statements were published without privilege to third parties including "CareWorks, the [Lake County BDD] Superintendent, an SSA Director, and an SSA employee."

To prevail in a defamation case under Ohio law, a plaintiff must demonstrate five elements: (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published without privilege to a third party, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault (at least negligence) in publishing the statement. *Fisher v. Ahmed,* 153 N.E.3d 612 (Ohio 9th App. Dist. 2020); *Gosden v. Louis*, 116 Ohio App.3d 195 (9th App.Dist. 1996).

In its previous Memorandum of Opinion and Order, this Court concluded that defendant Dye is statutorily immune with respect to that part of the defamation claim based on failure to act

7

with ordinary care (negligence), but not to the extent that she acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (Doc. 51 at 10-11). Plaintiff maintains that Dye's actions in conducting the investigation were in bad faith or with malicious purpose as evidenced[2] by the following: she originally had the audio/video on Powers' smart phone, but then sent the audio/video to Lake County BDD's IT department which broke the chain of custody; she reviewed the Incident Reports of Powers and Reith which were nearly identical in verbiage; she failed to determine if Powers and/or Reith had an animus towards plaintiff; she failed to interview plaintiff given that she scheduled the interview 36 days after plaintiff was terminated; she failed to quarantine the smart phone for analysis of the audio/video, and she failed to conduct a voice analysis of the recording; and she failed to inquire as to whether Fabian or Johnson had an animus or motive for terminating plaintiff. Additionally, Dye then summed up her incomplete and flawed investigation in her February 12, 2019 MUI summary letter to Bill, and sent copies to Jayson Fabian, County Board Superintendent Elfie Roman, Service and Support Administrator Director Michael Null, and Service and Support Administrator Craig Smith. Plaintiff contends that these bad faith actions subjected plaintiff to "termination, embarrassment, and humiliation." (Doc. 64 at 6).

For the following reasons, the Court finds no issue of fact precluding summary judgment to Dye on the defamation claim as there is no evidence presented that she knowingly published a false statement that injured plaintiff's reputation, i.e., acted with actual malice. *Varanese v. Gall*, 35 Ohio St.3d 78 (1988).

Initially, it must be noted that contrary to plaintiff's assertion that Dye "subjected her to

---

[2] Dye's actions are taken from her deposition testimony. (Doc. 63).

8

termination," there is no evidence that Dye terminated plaintiff or even somehow contributed to her termination. The evidence shows that Jayson Fabian made the decision to terminate plaintiff. (Defendants Brittany and Fabian's responses to defendants Lake County BDD and Dye's Interrogatory 1). The decision was made in the morning of December 17, 2018, and Fabian notified plaintiff before noon. (*Id.*). Plaintiff testified that Fabian called her "closer to noon" that day to inform her that she was terminated. (pltf. depo. at 132). The evidence also shows that Dye was assigned the investigation at 10:44 on the morning of December 17, and at 12:06 p.m. emailed Brittany asking for more information. (Dye decl., Ex. A). Dye met with Powers on December 19, to view the audio/video. (*Id.*). And, she did not learn of plaintiff's termination until December 20. (*Id.*). Thus, there is no factual basis to plaintiff's assertion that Dye subjected her to termination. Rather, plaintiff was terminated before Dye even began her investigation.

Nor is there evidence that Dye published a defamatory statement without privilege to a third party. Plaintiff asserts that copies of the February 12, 2019 MUI summary letter to Bill were sent to Jayson Fabian, County Board Superintendent Elfie Roman, Service and Support Administrator Director Michael Null, and Service and Support Administrator Craig Smith. However, these individuals were not third parties, but all members of Lake County BDD or Britanny Residential. Moreover, the publication of the letter was required by Ohio Admin. Code § 5123-17-02(J) and, therefore, was legally privileged. Notwithstanding, defendants point out that plaintiff is not named in the letter. Rather, she was referred to as the "Primary Person Involved (PPI)." (Dye decl. Ex. A at Page ID. 849). Thus, even assuming the individuals were non-privileged third parties, plaintiff's reputation could not have been injured.

9

Finally, none of plaintiff's contentions that Dye's investigation was conducted in bad faith is meritorious, as discussed immediately below.

Plaintiff points out that Dye originally had the audio/video on Powers' smart phone, but then sent it to Lake Count BDD's IT department which broke the chain of custody. But, plaintiff fails to present any evidence that there were any differences between the original on the smart phone and the copy received from IT. Plaintiff also notes that Dye "failed to quarantine" the smart phone for analysis of the audio/video, and did not conduct a voice analysis of the recording. At most, these actions might support negligence upon which Dye is immune. There is no evidence supporting a malicious motive especially considering Dye's testimony that Fabian and Johnson indicated to her that there was "no doubt" that the voice was plaintiff's. Moreover, plaintiff could have requested to inspect the smart phone, and have had her own expert examine it and conduct a voice analysis. She did not.

Plaintiff also points out that Dye relied on the nearly identical Incident Reports of Powers and Reith. Again, there is no evidence to support bad faith or malice. Dye stated in her declaration that she noticed the reports were nearly identical and that they did not indicate what exactly was said to Bill. Consequently, she requested more information from the Brittany Program Coordinator Holly Howle. (Dye decl.). Additionally, Dye testified at deposition that she noticed the reports were identical. But, when she met with Paige Powers, Powers explained that Gloria Reith had only "been on the job" for three days and Dye "didn't have any problem with that." (Dye depo. 23-24).

Next, plaintiff maintains that Dye failed to determine if Powers and/or Reith had an animus towards plaintiff, or whether Fabian or Johnson had an animus or motive for terminating

10

plaintiff. As to Reith, she was a new employee and no evidence has been presented of animus toward plaintiff.  Plaintiff surmises that Powers wanted plaintiff's shift hours.  Even if true, it does not make the audio/video recording any less true.  As for Johnson, he was not the decision maker.  There is no evidence that Fabian harbored an ill motive.  And, even so, plaintiff was an at-will employee who could have been terminated for any reason not contrary to law.  There was ample evidence presented to Fabian that plaintiff verbally abused Bill which would have supported her termination.

Lastly, plaintiff points out that Dye failed to schedule an interview until 36 days after she was terminated.  There is no evidence of malice given that the evidence establishes that plaintiff was actually terminated prior to or at the same time that Dye was assigned to the investigation. Dye did not learn of the decision until a few days thereafter. As such, plaintiff could not have been interviewed by Dye prior to her termination.  More importantly, plaintiff refused the opportunity to be interviewed.  (Dye. decl.).  Plaintiff acknowledged at deposition that she chose to not meet with Dye for the interview.  She testified that she considered it an aggravation, and that it was a "waste of time" because it was "made up." (pltf. depo. 135-137; depo. Ex. 9). In any event, the Ohio Administrative Code gave Dye 30 working days to complete the MUI.  She did so.  (O.A.C. 5123-17-02(H)(10); Dye decl., Ex. A).

For all the foregoing reasons, defendant Dye is entitled to summary judgment on the defamation claim.

**(2) Spoliation of Evidence**

Plaintiff continues to argue that she can maintain a spoliation of evidence claim against Dye based on the way she handled the audio/video recording on the smart phone. However, this

Court has previously decided that this claim fails to state a claim under Ohio law based on the facts produced by plaintiff. (Doc. 61 at 15-17). Moreover, plaintiff asserts that she was terminated due to the "tainted evidence" that was in Dye's control. But, as discussed above, plaintiff was terminated by Jayson Fabian well before Dye performed and completed her investigation.

Dye is entitled to summary judgment on the spoliation of evidence claim.

**Conclusion**

For the foregoing reasons, Defendants Lake County Board of Developmental Disabilities and Catherine Dye's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 11/18/20